UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CAFE PATACHOU AT CLAY TERRACE, LLC, et al.

Plaintiffs,

v.

CITIZENS INSURANCE COMPANY OF AMERICA,

Defendant.

INSURANCE SERVICES OFFICE, INC,

Interested Party.

No. 1:20-cv-01462-SEB-DLP

**ORDER ON PENDING MOTIONS**

This cause is before the Court on Defendant's Motion for Summary Judgment [Dkt. 61], Plaintiffs' Cross-Motion for Partial Summary Judgment [Dkt. 70], and Defendant's Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment [Dkt. 75]. This action was initiated by Plaintiffs to recover under a commercial insurance policy provided by Defendant ("Citizens") for economic losses sustained due to business closures necessitated by the spread of the novel coronavirus ("COVID-19"). Both parties seek summary judgments and Defendant also asks the Court to strike Plaintiffs' Cross-Motion for Partial Summary Judgment as untimely. For the reasons explicated below, we GRANT Defendant's Motion for Summary Judgment and Defendant's Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment. Accordingly, the clerk is

directed to note as stricken on the docket Plaintiffs' Cross-Motion for Partial Summary Judgment [Dkt. 70] to reflect this ruling.[1]

**Factual Background**

Plaintiffs are all separate restaurant establishments operating under common ownership within Indianapolis and Carmel, Indiana. Dkt. 60 at 2. We refer to them collectively as "Patachou," throughout this entry.

Beginning in March 2020, the spread of COVID-19 triggered a series of governmental orders across the country limiting large gatherings, mandating social distancing, and suspending non-essential activities and services. On March 6, 2020, the State of Indiana declared that a public health emergency existed attributable to COVID-19. *See* dkt. 60-2 at 1. On March 13, 2020, the President of the United States declared COVID-19 to be a national emergency. *See id.*

On March 16, 2020, food service establishments in Indiana, including restaurants providing in-person dining services, were required to close their establishments to in-person patrons, but were authorized to continue to provide drive-thru, take-out, and delivery services. *See id.* at 2. The following day, Patachou suspended all operations at nine of its twelve restaurants, but provided carry-out services at two of its restaurants for an additional three days before suspending all operations at all locations as of March 20, 2020. Dkt. 66-1 at 5. On March 23, 2020, Indiana's governor issued an executive order

---

[1] The clerk is also directed to STRIKE the sealed and redacted versions of Plaintiffs' Reply in Support of its Cross-Motion for Summary Judgment [Dkt. 90; Dkt. 91], as this brief effectively serves as an impermissible surreply. *See* S.D. Ind. L.R. 56-1(d).

directing the Indiana State Department of Health and local boards of health to take "all available administrative and enforcement actions against establishments that provide in-dining services." Dkt. 66-2 at 2.

The prohibition on in-person dining services remained in effect until May 2020, when Indiana announced its plan to reopen businesses and entities on a staged basis at a rate pegged to each county's COVID-19 statistics. *See* dkt. 60-6. Patachou re-opened three of its restaurants on May 28, 2020 and seven more restaurants between June and July 2020, but two restaurants closed permanently. Dkt. 66-1 at 5. There is no evidence that the COVID-19 virus was ever detected at any Patachou property. Dkt. 60 at ¶ 15.

On March 20, 2020, Patachou submitted a claim to Citizens for insurance coverage to offset financial losses from the closures. Under Citizens' commercial insurance policy ("Policy"), Citizens agreed to pay Patachou's lost business income and extra expenses due to a suspension of operations if the suspension was caused by "direct physical loss of or damage to" Patachou's property. Dkt. 60-1 at 54. The "loss or damage" must have been caused by or resulted from a Covered Cause of Loss. *Id.* Covered Cause of Loss means any "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 157. The Policy sets forth several exclusions including an "Ordinance or Law" exclusion and an "Exclusion of Loss Due to Virus or Bacteria." *Id.* at 152, 157. Patachou's claim to Citizens sought coverage based on the losses it sustained when its establishments were completely shut down following Indiana's executive orders.

Six days later, on March 26, 2020, Citizens denied Patachou's claim, stating that it had determined there to have been no covered "loss" under the Policy because Patachou's

restaurants did not sustain any "direct physical damage" and, alternatively, that the Policy's virus exclusion barred coverage even if Patachou could show that it suffered a covered loss. *See* dkt. 60-10 at 1–3. On April 17, 2020, Plaintiffs initiated this declaratory judgment lawsuit in Marion Superior Court seeking a ruling that, under the terms of the insurance policy, Patachou's losses constituted an actual loss of business income due to a necessary suspension of its operations, that the suspension had been caused by "direct 'loss' to property," and the "loss" had been caused by or resulted from a "Covered Cause of Loss." Dkt. 6 at 8. Defendant timely removed this action to our court on May 20, 2020, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. 1.

## Legal Analysis

To reiterate, three motions are at issue here. Because a ruling on Citizens' motion to strike affects the facts at issue in the parties' summary judgment motions, we shall first address the motion to strike and then address the summary judgment motions.

### I. Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment

Citizens has moved to strike Patachou's Cross-Motion for Summary Judgment based on its untimely filing pursuant to the Court's scheduling deadline. For the following reasons, we shall GRANT Citizens' Motion to Strike. Dkt. 75.

The July 29, 2020, Case Management Plan ("CMP") imposed deadlines for discovery and the filing of dispositive motions. The CMP designated May 20, 2021 as the deadline for filing dispositive motions, noting the parties' belief that summary judgment would likely resolve this insurance-coverage dispute. Dkt. 23 at 5. On May 18, 2021, the Court granted a joint motion to extend the dispositive motion deadline due to ongoing

discovery. Dkt. 48. Patachou subsequently sought a second extension of time to file a dispositive motion, [Dkt. 53], which the Court granted. The deadline was thus to July 30, 2021. Dkt. 55.

Citizens timely filed its motion for summary judgment in response to which Patachou sought another extension of time to respond, which the Court again granted. *See* Dkt. 61; Dkt. 64; Dkt. 68. Patachou's motion for an extension of time made no mention of its intent to file (or seek to file) an untimely cross-motion for summary judgment. Dkt. 64. Nevertheless, on August 30, 2021, thirty-one days after the dispositive motion deadline, Patachou filed a cross-motion for summary judgment contemporaneous with its brief in response to Citizens' motion for summary judgment. Dkt. 70; Dkt. 71.

Patachou maintains that despite the lateness of its cross-motion, it should be permitted because its untimeliness did not prejudice Citizens and would reduce the difficulty of the legal analysis both for Citizens and the Court by eliminating the necessity of filing two additional briefs, which would have resulted had both sides filed their respective motions by the designated deadline. Patachou describes its cross-motion as being limited in both purpose and substance, and essentially "identical" to a response to Defendant's summary judgment motion, "save for a couple extra lines of text in a footnote and a few stray references." Dkt. 76 at 1–2. No "new" issues, it says, were raised in its cross-motion, as each issue raised "supports both Patachou's opposition and its cross-motion—in the exact same manner." *Id.* at 2 (emphasis in original).

Citizens responds that Patachou's cross-motion for summary judgment should be stricken because it is plainly too late and is, in fact, prejudicial to Citizens interests.

Citizens reports that Patachou's counsel had previously attempted to obtain Citizens' agreement to a dispositive motion schedule that would have required Citizens to file its motion before Patachou's, thus providing Patachou the opportunity for the "last word." Dkt. 75-1. Citizens did not agree to modify the Court-ordered CMP schedule, confirming instead with opposing counsel that the parties should file their respective motions by the CMP's dispositive motion deadline. *Id.* In submitting their cross-motion following a twice-extended deadline, Citizens argues that Patachou is attempting to unilaterally impose its preferred schedule on Citizens and the Court. *See id.*

Rule 56(f) of the Federal Rules of Civil Procedure provides that the Court may, on its own motion, "(1) grant summary judgment for a nonmovant; [or] (2) grant the motion on grounds not raised by a party." Patachou relies on Rule 56(f) and a prior ruling from this court, *Society Insurance v. Jiffy Mini Marts, Inc.*, to support its claim that its untimely filing will not prejudice Citizens because the court is authorized when appropriate to enter summary judgment in its favor even without the filing of a cross-motion. No. 2:08-cv-0203, 2011 U.S. Dist. LEXIS 169821 (S.D. Ind. May 24, 2011) (denying insurer's motion to strike untimely cross-motion when new issues were not raised, where Plaintiff had not habitually missed court deadlines). Patachou maintains that the purpose behind the filing of its cross-motion was to "create a clean record and streamline briefing for the Court," arguing that its "four-brief" procedure is "far superior" to the "six-brief quagmire that Citizens proposes," so "it is hard to see any basis for Citizens' outrage." Dkt. 76 at 4–5.

We regard these arguments by Patachou as misleading and a bit disingenuous in light of the procedural history between the parties and with the Court. As Citizens correctly observes, "[c]ourts do not enter deadlines for no reason." Dkt. 77 at 1. Here, Rule 56(f), F.R Civ. P., rather than authorizing Patachou's self-designed schedule, actually supports the entry of an order to strike Patachou's untimely cross-motion, since a cross-motion is not required, and in any event, Patachou has not provided any persuasive reason to excuse its untimeliness. As our late colleague, Judge McKinney, stated in *Society Insurance*, "The Court has wide discretion in deciding whether to consider an untimely motion for summary judgment." *Soc'y Insurance*, 2011 U.S. Dist. LEXIS 169821, at *3. Patachou would likely have been on firmer procedural footing here if it had sought an extension of time or sought leave to file a cross-motion after the deadline passed or otherwise explained its tardiness. *See Patton v. MFS/Sun Life Financial Distributors, Inc.*, No. 1:04-cv-01335, 2005 WL 6115328, at *1 (S.D. Ind. Nov. 8, 2005) (granting motion to strike cross-motion filed forty-two days after the dispositive motion deadline when plaintiff failed to seek an extension or leave to file the untimely motion); *Wyatt v. Michelin N. Am., Inc.*, No. 1:02-CV-234, 2003 WL 21918710 (N.D. Ind. July 16, 2003) (granting a motion to strike filed four weeks after the dispositive motion deadline). Alas, Patachou chose simply to plow ahead with its ad hoc submission(s) and hope for the best.

Being duly advised, we find both unjustified delay and significant prejudice to Citizens if the motion is not stricken Thus, we GRANT Defendant's Motion to Strike Plaintiffs' Cross Motion for Summary Judgment. The arguments presented in Plaintiffs'

briefing fashioned as support for its cross-motion will not be considered. As Patachou itself has stated, however, its brief in support of its cross-motion is substantively identical to any response it would have filed to Defendant's motion for summary judgment. *See* dkt. 76 at 1–2. Therefore, Plaintiffs' brief will be deemed a response to Citizens' Motion for Summary Judgment. We shall disregard any text or references pertaining to Plaintiffs' cross-motion in our analysis.

## II. Summary Judgment Analysis

### A. Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### B. Applicable Law

Federal jurisdiction in the case at bar is based on diversity of citizenship, the resolution of which, as the parties agree, invokes principles of Indiana law. Dkt. 62 at 5; Dkt. 71 at 9. Under Indiana law, the interpretation of the provisions of an insurance contract raises questions of law to be determined by a court. *Buckeye State Mut. Ins. Co.*

*v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009) (citing *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006)). When interpreting an insurance policy, the court must "ascertain and enforce the parties' intent as manifested in the insurance contract" *Id.*, based on the policy as a whole in light of all the terms of the contract, not simply individual words, phrases, or paragraphs. *Briles*, 858 N.E.2d at 213. A court must also accept an interpretation of the contract language that harmonizes the various provisions, rather than embracing conflicting versions of those provisions. *Id.* As such, a court "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007).

**C. Policy Provisions**

Patachou asserts that its losses are covered under the Policy's Business Income and Extra Expense. These provisions provide, in relevant part, that:

> (1) **Business Income:** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by **direct physical loss of or damage to property** at premises which are described in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> . . .
>
> (2) **Extra Expense:**
> a. Extra Expense coverage is provided at the premises . . . only if . . . Business Income coverage applies at that premises.
> b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no **direct physical loss or damage to property** caused by or resulting from a Covered Cause of Loss.

Dkt. 60-1 at 54 (emphasis added).

Lost business income and extra expenses are paid only during the "period of restoration" which begins "72 hours after the time of direct physical loss or damage for Business Income coverage" or "[i]mmediately after the time of direct physical loss or damage for Extra Expense coverage" and ends either when the insured property "should be repaired, rebuilt or replaced with reasonable speed" or when "business is resumed at a new permanent location," whichever comes first. *Id.* at 59.

The Policy further provides that "Covered Causes of Loss means direct physical loss *unless the loss is excluded or limited* in this policy." *Id.* at 157 (emphasis added). As such, the Policy is an "all-risk" policy requiring that "an insured must prove that it suffered a covered loss before the burden shifts to the insurer to show an exclusion." *Ports of Ind. v. Lexington Ins. Co.*, No. 1:09-cv-0854, 2011 WL 5523419, at *9 (S.D. Ind. Nov. 14, 2011); *see also RAP Indy, LLC v. Zurich Am. Ins. Co.*, No. 1:19-cv-04657, 2021 WL 2416740, at *2 (S.D. Ind. June 14, 2021) (applying Indiana law and holding that the insured has the initial burden of showing the existence of a loss under an "all-risk" policy before the burden shifts to the insurer). Therefore, Patachou's claim for coverage requires it first to prove that it has suffered "direct physical loss" before the burden shifts to Citizens to show that one or more of the Policy exclusions applies to bar coverage. *See* Dkt. 60-1 at 54.

**D. Coverage**

The parties' coverage dispute begins with the issue of whether Patachou has suffered any "direct physical loss of . . . property." We note that the Indiana appellate

courts have not yet considered whether economic losses stemming from COVID-19 governmental shutdowns constitute "direct physical loss of . . . property" sufficient to establish coverage under a commercial insurance policy. When a state's highest court has not ruled on an issue, our court "must apply Indiana law by doing [its] best to predict how the Indiana Supreme Court would decide" the issue. *Webber v. Butner*, 923 F.3d 479, 482 (7th Cir. 2019); *see also Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782, 786 (7th Cir. 2017). When a dispute arises over the meaning of insurance policy terms, as it has here, "Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning." *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 630 (Ind. 2018) (citation omitted). But, "[w]here there is ambiguity, insurance policies are construed strictly against the insurer, and the policy language is viewed from the standpoint of the insured." *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016).

The Policy includes no explicit definition of the phrase "direct physical loss of . . . property" *see* dkt. 60-1, but the absence of such a provision does not necessarily create an ambiguity. *see Erie*, 99 N.E.3d at 630 ("[F]ailing to define a policy term merely means it has no exclusive special meaning, and the courts can interpret it."). Further, the existence of a disagreement among courts interpreting a specific insurance policy provision is not enough, by itself, to conclude that a particular clause is ambiguous. *See Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 248 (Ind. 2005) (holding insurance policy unambiguous despite disagreement between jurisdictions); *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, No. 1:20-cv-02512, 2021 WL 3187521, at *5–6 (S.D. Ind. July

27, 2021). Instead, a phrase or provision is "ambiguous only if it is susceptible to more than one reasonable interpretation." *G&G Oil Co. of Indiana v. Cont'l W. Ins. Co.*, 165 N.E.3d 82, 87 (Ind. 2021) (citations and emphasis omitted). In other words, the issue of contractual ambiguity turns on whether "reasonably intelligent policyholders could . . . legitimately disagree as to what the [phrase] means." *Id.*

Patachou maintains that it suffered a "direct physical loss of" its property when the government's shut down orders forbade it from fully accessing and using its facilities for over two months. *See* dkt. 60-9. At the very least, therefore, the phrase "direct physical loss of . . . property" is ambiguous. Citing a series of federal and out-of-state state decisions, Patachou contends that "direct physical loss" has been subjected to a "spectrum of accepted interpretations" and is a concept (or phrase) that should be broadly construed to encompass property that is "uninhabitable, inaccessible, or dangerous to use because of intangible, or non-structural, sources." Dkt. 71 at 12–15 (quoting *Elegant Massage LLC v. State Farm Mut. Auto. Ins. Co.*, 2020 U.S. Dist. LEXIS 231935, at *22, *27 (E.D. Va. Dec. 9, 2020)). Due to Indiana's governmental orders, Patachou's business establishments were deemed uninhabitable and inaccessible for in-person dining, which constituted a "direct physical loss." Alternatively, Patachou argues, given the "spectrum of interpretations" of the phrase, its interpretation deserves adoption and enforcement here because it is reasonable. *See Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1014 (Ind. 2010) ("A reasonable construction that supports the policyholders' position must be enforced as a matter of law.").

Citizens responds that Indiana trial courts who have analyzed this Policy's operative language have unanimously ruled that economic losses stemming from pandemic-related governmental orders do not constitute "physical loss." The governmental orders issued by Indiana permitted restaurant establishments to provide carryout, take-out, delivery, and drive-through services. Thus, Patachou cannot establish any actual, demonstratable harm to its properties or that the governmental executive orders prohibited "all access" to its establishments; if Patachou chose to close its restaurants completely, it did so voluntarily. The clear and unambiguous language of the Policy, says Citizens, covers the Plaintiffs' property against direct physical loss or damage; because Patachou's property remained in the same "physical" condition that it was in prior to any COVID-19 related executive orders, Patachou cannot be deemed to have suffered a covered loss under the Policy.

We share Defendant's view that Patachou has failed to establish a "direct physical loss of . . . property" warranting coverage under the Policy. Courts addressing this issue under Indiana law have, indeed, been unanimous in their conclusion that economic losses prompted by or resulting from COVID-19 government shutdowns and restrictions do not constitute a "direct physical loss." *Circle Block Partners, LLC*, 2021 WL 3187521, at *4 (S.D. Ind. July 27, 2021) (finding that "'direct physical loss' to property requires a harmful alteration in the appearance, shape, color, composition, or other material dimension of the property"); *Georgetown Dental, LLC v. Cincinnati Ins. Co.*, No. 1:21-cv-00383, 2021 WL 1967180, at *7 (S.D. Ind. May 17, 2021) (holding that insurance policy's coverage requirement of "'physical loss' or 'physical damage' must be actual and

demonstrable harm"); *Indiana Repertory Theatre v. Cincinnati Ins. Co.*, No. 49D01-2004-PL-013137, 2021 WL 5312179, at *11 (Ind. Super. Ct. Mar. 12, 2021) ("If loss of use alone qualified as direct physical loss to property, then the term 'physical' would have no meaning."); *MHG Hotels, LLC v. Emcasco Ins. Co., Inc.*, No. 1:20-cv-01620, 2021 WL 4472701, at *5 (S.D. Ind. Mar. 8, 2021) (interpreting policy's coverage of "direct physical loss" to mean "a loss that requires the insured to repair, rebuild, or replace property that has been tangibly, physically altered – not the insured's loss of use of that property").

We find persuasive the logic explicated in these opinions. It incorporates a cogent analysis of factually similar situations compared to our case. Patachou attempts to distinguish these holdings on the basis of ultimately insubstantial differences of language, to wit, that "direct physical loss <u>of</u>" property (the language of the Policy before us) materially differs from "direct physical loss <u>to</u>" property (the policy language in other recently issued COVID-19 insurance decisions) because the words "to" and "of" are not linguistically interchangeable. Dkt. 71 at 22. We regard this distinction as being without a difference, and in any event, it is not a distinction that has been recognized as controlling by other courts interpreting Indiana law. Indiana courts have analyzed "direct physical loss of or damage to property" (*MHG Hotels*), "direct physical loss or damage to property" (*Indiana Repertory Theatre* and *Circle Block*), and "accidental physical loss or accidental physical damage" (*Georgetown Dental*) provisions, and, in each instance, held that demonstratable physical harm to property is what is contemplated and required.

The controlling provision in the Citizens' Policy is the phrase "direct physical loss," which unambiguously "requires a physical alteration to property." *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, No. 21-1186, 2021 WL 5833525, at *4 (7th Cir. Dec. 9, 2021); *see also Indiana Repertory Theatre*, 2021 WL 5312179, at *11 ("[T]he Policy requires physical alteration to the premises to trigger the business income coverage."). The Seventh Circuit has recently joined the Sixth, Eighth, Ninth, and Eleventh Circuits[2] in holding that claims for business losses attributable to COVID-19 governmental executive orders imposing requirements on businesses to close or dramatically scale back their respective operations, unaccompanied by any physical alteration to property, do not result in a "direct physical loss." *See Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, No. 21-1173, 2021 WL 5833486, at *1 (7th Cir. Dec. 9, 2021); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, No. 21-1316, 2021 WL 5833485, at *1–2 (7th Cir. Dec. 9, 2021); *Sandy Point Dental, P.C.*, 2021 WL 5833525, at *4. Although these recent Seventh Circuit opinions applied Illinois law, we find no basis on which to conclude that the interpretive principles under Illinois law do not apply equally to insurance contracts in Indiana.[3]

---

[2] *See Santo's Italian Café, LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021); *Oral Surgeons, PC v. The Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021); *Chattanooga Professional Baseball LLC v. National Casualty Company*, No. 20-17422, 2021 WL 4493920 (9th Cir. Oct. 1, 2021); *Mudpie, Inc., v. Travelers Casualty Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021); *Selane Products, Inc. v. Continental Casualty Company*, No. 21-55123, 2021 WL 4496471 (9th Cir. Oct. 1, 2021); *Gilreath Family & Cosmetic Dentistry, Inc. v. The Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021).

[3] "Under Illinois law, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. Furthermore, [a] policy provision is not rendered

In *Sandy Point Dental*, the Seventh Circuit recently addressed three consolidated claims by insured businesses, each seeking coverage for income losses sustained on account of state executive orders requiring them to close or dramatically scale back their respective operations. *Sandy Point Dental, P.C.*, 2021 WL 5833525, at *1. The plaintiffs "were covered for income losses resulting from direct physical loss or direct physical damage to property." *Id.* at *2. The appellate court rejected plaintiffs' common assertion that the phrase "direct physical loss" requires an expansive interpretation that encompasses not only physical alterations to property, but also loss of use. *Id.* at *3. Noting that the phrase "direct physical" clearly modifies the word "loss," and that any other interpretation would remove from the analysis the term "physical," the Seventh Circuit held that "[w]hatever 'loss' means, it must be physical in nature." *Id.*

Textual clues "reinforce the conclusion that 'direct physical loss' requires a physical alteration to property," according to our court of appeals, including the policy's coverage for losses sustained during a "period of restoration," which incorporates the date by which the property "should be repaired, rebuilt, or replaced." *Id.* at *4. There would be nothing to repair, rebuild, or replace in the absence of a physical alteration to property. *Id.* It was Patachou's preferred use of the premises, that is, as a fully operating business concern, that was effected, not its property as such, when operations were reduced to partial operations, and limited uses remained possible. The partial loss of use does not

---

ambiguous simply because the parties disagree as to its meaning. Rather, an ambiguity exists when the policy language is subject to more than one reasonable interpretation." *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, No. 21-1186, 2021 WL 5833525, at *3 (7th Cir. Dec. 9, 2021) (internal citations and quotation marks omitted).

constitute a "direct physical loss." *Id.* at *5–6. The policy provisions under review here provided coverage for losses to plaintiffs' physical property, not for reductions in the ideal or preferred use of that property. In reaching this conclusion, the Seventh Circuit rejected other district court decisions representing a minority view that turned on plaintiffs' loss-of-use theory. *See id.* at *4–6.

In an analogous case to ours, in *Sandy Point Dental*, TJBC, Inc. ("TJBC"), one of the plaintiff's businesses owned and operated food and beverage establishments, which were required to suspend in-person dining and limit services to delivery and take-out beginning in March 2020 until June 26, 2020. *Id.* at *1–2. TJBC, like Patachou, was prohibited from allowing its restaurant customers to be served inside the business premises over several months. Neither TJBC nor Patachou alleged any actual physical harm to its premises. Their complaint was simply that their restaurants were not able to operate at full tilt during the COVID-19 shutdowns, to-wit, by providing in-person dining.

The Policy under review here clearly covers a loss to Patachou's physical property; it does not cover the owners' reduced use of the property in any particular fashion. A policy provision premised on a "direct physical loss" provides coverage when a loss from a physical alteration to the insured property has occurred, not for a reduction in the usefulness of the property or for its inability to function in accordance with its intended purposes. Thus, we hold that the ordinary meaning of the Policy's coverage requirement of "direct physical loss of . . . property" does not include coverage for business losses

alleged to have occurred without any physical alteration to the physical premises or the property located within.

**E. Exclusions**

Citizens maintains that, even if the Court were to find that Plaintiffs successfully established a direct physical loss of property for business income and extra expense coverage, summary judgment in its favor is still required because both the "virus exclusion"[4] and the "ordinance or law exclusion" in the Policy apply to bar Patachou's claims.[5] Given our conclusion that the Policy does not provide coverage for Patachou's business losses, consistent with the Seventh Circuit's recent holdings, we need go no further in discussing the applicability of these exclusions. The Policy's exclusions would be triggered only when a direct physical loss has been established. *See, e.g.*, *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 n.3 (N.D. Ill. 2020), *aff'd sub nom. Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, No. 21-1186, 2021 WL 5833525, at *1 (7th Cir. Dec. 9, 2021); *Santo's Italian Café LLC*, 15 F.4th at 406–07 (declining to resolve the parties' arguments concerning the policy's virus and ordinance and law exclusions because "the absence of initial coverage for this claim suffices to reject it").

**III. Conclusion**

---

[4] Under the virus (i.e. COVID-19) exclusion, Citizens "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Dkt. 60-1 at 152.

[5] The ordinance or law exclusion applies to bar payment for "loss or damage caused directly or indirectly" from . . . "the enforcement of or compliance with any ordinance or law … regulating the construction, use or repair of any property" and applies "even if the property has not been damaged." Dkt. 60-1 at 157.

For the reasons stated above, Citizens' Motion for Summary Judgment [Dkt. 61] and Motion to Strike Plaintiffs' Cross-Motion for Partial Summary Judgment [Dkt. 75] are GRANTED. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: 12/22/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

George A. Gasper
ICE MILLER LLP (Indianapolis)
george.gasper@icemiller.com

Gregory M. Gotwald
PLEWS SHADLEY RACHER & BRAUN LLP
ggotwald@psrb.com

Christopher Edward Kozak
PLEWS SHADLEY RACHER & BRAUN LLP
ckozak@psrb.com

Ryan Taylor Leagre
PLEWS SHADLEY RACHER & BRAUN
rleagre@psrb.com

Alexa B. Lutchen
DAVIS POLK & WARDWELL LLP
alexa.lutchen@davispolk.com

William K. McVisk
TRESSLER LLP
wmcvisk@tresslerllp.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN LLP
gplews@psrb.com

Michael Scheinkman
DAVIS POLK & WARDWELL LLP
michael.scheinkman@davispolk.com

Todd Stewart Schenk
TRESSLER SODERSTROM MALONEY & PRIESS
tschenk@tresslerllp.com

Meredith Wood
ICE MILLER, LLP
meredith.wood@icemiller.com